1  EDWARD P. WALKER (*Pro Hac Vice*)
   JOHN W. O'MEARA (*Pro Hac Vice*)
2  VU Q. BUI (*Pro Hac Vice*)
   OLIFF & BERRIDGE, PLC
3  277 South Washington Street, Suite 500
   Alexandria, VA 22314
4  Telephone: (703) 836-6400
   Facsimile: (703) 836-2787
5  ewalker@oliff.com; jomeara@oliff.com; vbui@oliff.com
6
   KENNETH L. NISSLY (CA Bar No. 77589)
7  SUSAN van KEULEN (CA Bar No. 136060)
   THELEN REID & PRIEST LLP
8  225 West Santa Clara Street, Suite 1200
   San Jose, CA 95113-1723
9  Telephone: (408) 292-5800
   Facsimile: (408) 287-8040
10 kennissly@thelenreid.com; svankeulen@thelenreid.com
11
   Attorneys for Defendant/Counterclaim Plaintiff
12 Rossignol Ski Company, Inc.
13
                 UNITED STATES DISTRICT COURT
14               NORTHERN DISTRICT OF CALIFORNIA
                   (SAN FRANCISCO DIVISION)
15

16 RICHARD W. BERGER and          | Case No. 3:05-CV-02523-CRB
   BRANT W. BERGER,               |
17                                | **ROSSIGNOL'S MOTION FOR**
              Plaintiffs,         | **SUMMARY JUDGMENT OF**
18                                | **UNENFORCEABILITY (DUE TO**
       v.                         | **EQUITABLE ESTOPPEL),**
19                                | **NONINFRINGEMENT AND/OR**
   ROSSIGNOL SKI COMPANY, INC.,   | **INVALIDITY**
20                                |
              Defendant.          |
21
22 ROSSIGNOL SKI COMPANY, INC.,   |
23           Counterclaim Plaintiff, | Date:   March 31, 2006
                                  | Time:   10:00 a.m.
24       v.                       | Place:  San Francisco
                                  |         Courtroom 8, 19th Floor
25 RICHARD W. BERGER and          | Before: District Judge Charles R. Breyer
   BRANT W. BERGER,               |
26
27           Counterclaim Defendants.
28                              -1-

# TABLE OF CONTENTS

I.   STATEMENT OF THE ISSUES AND SUMMARY OF ARGUMENT ............................ 2

II.  BACKGROUND AND UNDISPUTED MATERIAL FACTS ............................................ 3

    A.   The 530 Patent ...................................................................................................... 3

    B.   The Accused Rossignol Snowboard Binding ........................................................ 4

    C.   Plaintiffs' Delay In Bringing This Action ............................................................. 5

    D.   Plaintiffs' Belated Infringement Contentions ....................................................... 7

III. LAW AND ARGUMENT ................................................................................................ 7

    A.   Summary Judgment Standard ................................................................................ 7

    B.   In View of Plaintiffs' Long Delay Of More Than Six Years In
          Asserting Their Patent Rights Against Rossignol, And The Resultant
          Material Prejudice To Rossignol, Plaintiffs Should Be Estopped From
          Maintaining This Action Against Rossignol ......................................................... 8

          1.   Law Relating To Equitable Estoppel ....................................................... 8

          2.   Plaintiffs Should Be Equitably Estopped From Maintaining This
                 Action Against Rossignol ......................................................................... 9

    C.   Even If Enforceable, Plaintiffs' Asserted Patent Claims Are Not
          Infringed By Rossignol's Accused Binding, As Admitted By Plaintiffs ................ 11

          1.   Law Relating To Noninfringement ......................................................... 12

          2.   Plaintiffs Have Admitted That Rossignol's Accused Binding Is
                 Missing The "Rotation Of The Upper Attachment Relative To
                 The Lower Attachment" Element Of The Asserted Claims, And
                 Therefore Does Not Infringe ................................................................... 13

          3.   Plaintiffs Have Admitted That Rossignol's Accused Binding Is
                 Missing The "Automatically Engage With Each Other To Lock
                 ... And To Permit Rotation" Element of the Asserted Claims,
                 And Therefore Does Not Infringe ........................................................... 14

          4.   Plaintiffs Have Admitted That Rossignol's Accused Binding Is
                 Missing The "Without Release" Element Of The Asserted
                 Claims, And Therefore Does Not Infringe .............................................. 15

-i-

5.   Plaintiffs Have Admitted That Rossignol's Accused Binding Is Missing The "Coupling Mount Attached …" Element Of The Asserted Claims, And Therefore Does Not Infringe........................................ 16

D.   The Asserted Claims Of The 530 Patent Are Invalid, Particularly If Applied So As To Cover Rossignol's Accused Binding ................................... 17

1.   Law Relating to Invalidity ................................................................. 18

2.   Plaintiffs' Asserted Claims Are Invalid Under 35 U.S.C. §102(b) As Anticipated By PCT Publication WO 89/08480 (AITEC) ......................... 20

3.   Plaintiffs' Asserted Claims Are Invalid Under 35 U.S.C. §102(b) As Anticipated By French Patent Publication 2,618,688 (Scott)..................... 20

4.   Plaintiffs' Asserted Claims Are Alternatively Invalid Under 35 U.S.C. §103(a) For Obviousness From AITEC Or Scott InView Of One Another And/Or Additional Prior Art...................................... 21

IV.   CONCLUSION .............................................................................................. 25

-ii-

ROSSIGNOL'S MOTION FOR SUMMARY JUDGMENT OF UNENFORCEABILITY, NONINFRINGEMENT AND/OR INVALIDITY
Case No. 3:05-CV-02523 CRB

1

# **TABLE OF AUTHORITIES**

2

## **Cases**

3
*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,*
4    960 F.2d 1020 (Fed. Cir. 1992) ................................................................. 8, 11

5
*ABB Robotics Inc. v. GMFanuc Robotics Corp.,*
6    52 F.3d 1062 (Fed. Cir. 1995) ................................................................. 9, 11

7
*Amazon.com, Inc. v. Barnesandnoble.com, Inc.,*
    239 F.3d 1343 (Fed. Cir. 2001) ................................................................. 12

8
*Bayer AG v. Elan Pharm. Research Corp.,*
9    212 F.3d 1241 (Fed. Cir. 2000) ................................................................. 13

10
*Brown v. 3M,*
    265 F.3d 1349 (Fed. Cir. 2001) ................................................................. 18
11
*Celeritas Techs. Ltd. v. Rockwell Int'l Corp.,*
12    150 F.3d 1354 (Fed. Cir. 1998) ................................................................. 18

13
*Cole v. Kimberly-Clark Corp.,*
14    102 F.3d 524 (Fed. Cir. 1996) ................................................................. 13

15
*Desper Prods., Inc. v. QSound Labs, Inc.,*
    157 F.3d 1325 (Fed. Cir. 1998) ................................................................. 8
16
*Faroudja Labs., Inc. v. Dwin Elecs., Inc.,*
17    1999 WL 111788 (N.D. Cal. 1999) ................................................................. 12

18
*Freedman Seating Co. v. American Seating Co.,*
19    420 F.3d 1350 (Fed. Cir. 2005) ................................................................. 13

20
*Globetrotter Software, Inc. v. Elan Computer Group, Inc.,*
    1999 WL 33490210 (N.D. Cal. 1999) ................................................................. 12
21
*Graham v. John Deere Co.,*
22    383 U.S. 1 (1966) ................................................................. 19

23
*In re Gorman,*
    933 F.2d 982 (Fed. Cir. 1991) ................................................................. 24
24
*In re GPAC, Inc.,*
25    57 F.3d 1573 (Fed. Cir. 1995) ................................................................. 19

26
*Iron Grip Barbell Co. v. USA Sports, Inc.,*
27    392 F.3d 1317 (Fed. Cir. 2004) ................................................................. 18

28

-iii-

*Kansas Jack, Inc. v. Kuhn,*
    719 F.2d 1144 (Fed. Cir. 1983) ................................................................................... 24

*Markman v. Westview Instruments, Inc.,*
    52 F.3d 967 (Fed. Cir. 1995) ...................................................................................... 12

*Medical Instrumentation and Diagnostics Corp. v. Elekta AB,*
    344 F.3d 1205 (Fed. Cir. 2003) ................................................................................... 19

*Pfaff v. Wells Elecs., Inc.,*
    124 F.3d 1429 (Fed. Cir. 1997) ................................................................................... 19

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005) ................................................................................... 12

*Rogers v. Desa Int'l, Inc.,*
    166 F.Supp.2d 1202 (E.D. Mich. 2001) ....................................................................... 12

*Sandt Tech., Ltd. v. Resco Metal and Plastics Corp.,*
    264 F.3d 1344 (Fed. Cir. 2001) ..................................................................................... 8

*Scholle Corp. v. Blackhawk Molding Co.,*
    133 F.3d 1469 (Fed. Cir. 1998) ................................................................... 8, 9, 10, 11

*Searfoss v. Pioneer Consolidated Corp.,*
    374 F.3d 1142 (Fed. Cir. 2004) ................................................................................... 17

*SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.,*
    225 F.3d 1349 (Fed. Cir. 2000) ............................................................................. 18, 19

*Southwall Techs., Inc. v. Cardinal IG Co.,*
    54 F.3d 1570 (Fed. Cir. 1995) ................................................................................. 8, 11

*Telemac Cellular Corp. v. Topp Telecom, Inc.,*
    247 F.3d 1316 (Fed. Cir. 2001) ................................................................................. 7, 8

*Transclean Corp. v. Bridgewood Servs., Inc.,*
    290 F.3d 1364 (Fed. Cir. 2002) ................................................................................... 19

*Vivid Techs., Inc. v. American Science & Eng'r., Inc.,*
    200 F.3d 795 (Fed. Cir. 1999) ..................................................................................... 12

*Warner-Jenkinson Co. v. Hilton Davis Chemical Co.,*
    520 U.S. 17 (1997) ...................................................................................................... 13

*Wilson Sporting Goods Co. v. David Geoffrey & Assocs.,*
    904 F.2d 677 (Fed. Cir. 1990) ..................................................................................... 14

*Zodiac Pool Care Inc. v. Hoffinger Indus. Inc.*
    206 F.3d 1408 (Fed. Cir. 2000) ................................................................................... 13

**<u>Statutes</u>**

35 U.S.C. §102 ................................................................................................ 19

35 U.S.C. §102(b) ..................................................................................... 21, 22, 23

35 U.S.C. §102(e) ........................................................................................... 22

35 U.S.C. §103(a) ............................................................................................ 19

1

## TABLE OF EXHIBITS

2      The following is a table of the exhibits to this motion, authenticated by the accompanying
Declaration of John W. O'Meara:

3

| Exhibit No. | Description |
|---|---|
| 1. | U.S. Patent No. 5,913,530 to Berger et al. |
| 2. | Photographs of Rossignol's Accused Snowboard Binding |
| 3. | Declaration of Gilles Marmonier and attached Exhibits A through K |
| 4. | Plaintiffs' Preliminary Infringement Contentions |
| 5. | International PCT Publication No. WO 89/08480 ("AITEC") and Certified English Translation |
| 6. | French Patent Publication No. 2,618,688 to Scott de Martinville ("Scott") and Certified English Translation |
| 7. | U.S. Patent No. 5,660,410 to Alden ("Alden") |
| 8. | U.S. Patent No. 5,520,406 to Anderson et al. ("Anderson") |
| 9. | U.S. Patent No. 5,577,755 to Metzger et al. ("Metzger") |
| 10. | Rossignol's Chart Applying the Asserted Claims of U.S. Patent No. 5,913,530 to the Prior Art AITEC Publication |
| 11. | Rossignol's Chart Applying the Asserted Claims of U.S. Patent No. 5,913,530 to the Prior Art Scott Publication |
| 12. | Rosssignol's Chart Applying the Asserted Claims of U.S. Patent No. 5,913,530 to the Prior Art Alden Patent |
| 13. | Rossignol's Chart  Applying the Asserted Claims of U.S. Patent No. 5,913,530 to the Prior Art Anderson Patent |
| 14. | Rossignol's Chart Applying the Asserted Claims of U.S. Patent No. 5,913,530 to the Prior Art Metzger Patent |
| 15. | 1990/1991 Look Snowboards Brochure and Certified English Translation |
| 16. | *Faroudja Labs., Inc. v. Dwin Elecs., Inc.*, 1999 WL 111788 (N.D. Cal. 1999) |
| 17. | *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 1999 WL 33490210 (N.D. Cal. 1999) |

-vi-

PLEASE TAKE NOTICE that Defendant/Counterclaim Plaintiff Rossignol Ski Company, Inc. ("Defendant" or "Rossignol"), by and through its attorneys, will respectfully move this Court before the Honorable Charles R. Breyer, on March 31, 2006 at 10:00 a.m. at the United States Courthouse, 450 Golden Gate Avenue, Courtroom 8, 19th Floor, San Francisco, California, for summary judgment declaring the patents asserted by Plaintiffs in this action[1] to be unenforceable, not infringed and/or invalid, and for dismissal of this action with prejudice.

More particularly, Rossignol will respectfully move this Court, pursuant to Fed. R. Civ. P. 56 and Civil L.R. 56, for the entry of summary judgment on three grounds. First, Plaintiffs' asserted patents are unenforceable against Rossignol (and this action should be barred) based on equitable estoppel due to the lengthy and unjustified delay by Plaintiffs -- spanning a period of more than six years -- in asserting their patents against Rossignol. Second, Plaintiffs' asserted patent claims are not infringed by the Rossignol snowboard binding accused of infringement by Plaintiffs, at least because, by Plaintiffs' own admissions, a number of claim elements are missing from Rossignol's accused binding. Third, the asserted claims are invalid in view of the prior art, particularly if applied so as to cover Rossignol's accused binding.

The detailed reasons supporting Rossignol's motion are explained in the following Memorandum of Points and Authorities, and in the Declarations of John W. O'Meara ("O'Meara Decl.") and Gilles Marmonier ("Marmonier Decl.") with attached exhibits filed concurrently herewith. In accordance with Civil L.R. 7-2, a proposed Order is also filed herewith.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      STATEMENT OF THE ISSUES AND SUMMARY OF ARGUMENT

The  issues presented by this motion are whether: (1) Plaintiffs' action is barred by equitable estoppel, (2) Plaintiffs' asserted patent claims are not infringed, and (3) Plaintiffs'

---

[1] Plaintiffs' Second Amended Complaint references both U.S. Patent No. 5,913,530 ("530 Patent") and U.S. Patent No. 5,196,569 ("569 Patent").  However, in Plaintiffs' Infringement Contentions served on January 4, 2006, Plaintiffs indicated that they are asserting only claims 1, 2, 4-6, 8, 19, 21-23, 26-28 and 30 of the 530 Patent and no claims of the 569 Patent.

1  asserted patent claims are invalid in view of the prior art.  Rossignol respectfully submits that

2  these issues should be decided, and summary judgment should be entered, in Rossignol's favor.

3       Plaintiffs contacted Rossignol in 1998 regarding the possible applicability of Plaintiffs'

4  prospective patents to a snowboard binding that had been recently introduced by Rossignol.  After

5  Rossignol explained that its binding would not infringe Plaintiffs' patents, Rossignol did not hear

6  further from Plaintiffs after May 1999 until served with Plaintiffs' First Amended Complaint on

7  October 4, 2005.  Meanwhile, in reliance on Plaintiffs' silence and inaction, Rossignol proceeded

8  to manufacture, market and sell products containing the previously discussed binding that is now

9  the subject of this lawsuit. Thus, Plaintiffs should be equitably estopped as a matter of law from

10  maintaining this action in order to avoid material prejudice to Rossignol.

11       Even if this action could be continued by Plaintiffs, the asserted claims of the 530 Patent

12  are not infringed by the accused Rossignol binding.  Indeed, Plaintiffs, in vainly trying to read the

13  asserted 530 Patent claims on Rossignol's binding, have been forced to tacitly admit that a number

14  of claim elements are missing from the binding.  Moreover, if Plaintiffs' asserted claims are

15  applied so as to cover Rossignol's binding, the claims are clearly invalid in view of the prior art.

16  **II.  BACKGROUND AND UNDISPUTED MATERIAL FACTS**

17      **A.  The 530 Patent**

18       The 530 Patent (Ex. 1) discloses a rotatable,

19  automatic engagement snowboard binding in which

20  a single coupling mechanism is used both to lock

21  the boot to the board and to permit rotation of the

22  boot with respect to the board, such that a

23  snowboarder can step onto the board and then rotate

24  the boot to a selected rotary position without having



FIG._1

25  to first actuate a rotation release mechanism.  The 530 Patent (Fig. 1 shown here with enlarged ref.

26  nos.) describes such a binding 210, with an upper attachment plate 212 and a coupler 220 fixed to

27  a boot 214, and a lower attachment plate 216 and a coupling mount 222 fixed to a snowboard 218.

28

Figs. 2 through 4 and the corresponding written description provide details of the upper and lower attachment plates, coupler and coupling mount.  Figs. 5-27 and the corresponding written description provide details of an alternative, similar embodiment of a binding.

Claim 1 of the 530 Patent, the only independent claim asserted by Plaintiffs, recites: "A binding, comprising:  a boot comprising an upper attachment, a lower attachment connectable to a board, a coupler attached to one of said upper and lower attachments, and a coupling mount attached to the other of said upper and lower attachments,"  and further recites:

> the coupling mount and the coupler being configured to automatically engage with each other to lock the upper attachment to the lower attachment when a user wearing the boot steps onto the lower attachment and to permit rotation of the upper attachment relative to the lower attachment when the upper attachment is locked to the lower attachment without release of said upper attachment from said lower attachment.

The dependent claims of the 530 Patent asserted by Plaintiffs, i.e., claims 2, 4-6, 8, 19, 21-23, 26-28 and 30, recite additional details of the binding of claim 1.

### B.    The Accused Rossignol Snowboard Binding

Rossignol's accused snowboard binding (*see* Ex. 2 photographs, one set forth here) includes a base 1 rotatably mounted to a snowboard atop a disc 2 (by means of a central hold-down disc, not shown), and a pair of lateral jaws 3 on base 1 that interact with pins 4 laterally extending from the bottom of a snowboard boot.    Pins 4 engage with jaws 3 to lock the boot to the



binding and snowboard when a snowboarder steps onto the snowboard, whereas rotation of the boot relative to the snowboard is permitted by the rotatability of base 1 upon actuation of a release mechanism 5 that releases gear 6 from engagement with teeth on the periphery of disc 2 (beneath base 1).

1    **C.    Plaintiffs' Delay In Bringing This Action**

2        As far back as April 1998, more than seven years before the filing of the original

3    Complaint in this case, Plaintiffs' attorney first contacted Rossignol, through Rossignol's then

4    President (Mr. Rodet), its then CEO (Mr. Vives), and its parent company, regarding Plaintiffs'

5    alleged invention.  At that time, Plaintiffs' attorney advised Rossignol of Plaintiffs' International

6    PCT Publication No. WO 97/49464, stated that "the claimed subject matter in the PCT application

7    presents an issue of potential infringement" with respect to a rotatable step-in binding that had

8    been recently introduced by the Rossignol Group of companies, and further indicated that

9    Plaintiffs were interested in meeting with Rossignol to discuss a possible collaboration with

10   respect to Plaintiffs' rotatable step-in binding.  In May 1998, Rossignol wrote to Plaintiffs' attorney

11   that "we consider that our products don't infringe your clients' patent right" and that "in our

12   opinion the claims which could concern our rotating step-in snowboard bindings cannot be

13   accepted by the Patent Office due to a lot of prior arts," but that Rossignol was willing to meet

14   with Plaintiffs as Plaintiffs requested.  (Ex. 3, Marmonier Decl., ¶¶ 2-4 and Exs. A and B).

15       In May 1998, Plaintiff Richard Berger wrote to Rossignol (1) acknowledging Rossignol's

16   "view of infringement," (2) conclusorily stating the Bergers' positions of infringement and validity,

17   and (3) expressing an interest in a business relationship with the "Rossignol Group," which

18   included Rossignol Ski Company, Inc.  In June 1998, Rossignol wrote Mr. Berger, indicating

19   Rossignol's availability for a meeting but reiterating that "we do confirm that in our opinion we

20   don't infringe valid claims of your patent."  (Ex. 3, Marmonier Decl., ¶ 4 and Exs. C and D).

21       Plaintiffs Richard Berger and Brant Berger then met with representatives of Rossignol in

22   July 1998, and provided Rossignol at that time with some binding samples for Rossignol's

23   consideration.  However, in October 1998, Rossignol wrote to Richard Berger indicating that, due

24   to problems with the Berger binding, Rossignol had decided not to use it.  In March 1999, the

25   Bergers' attorney advised Rossignol that the Bergers' corresponding U.S. patent application (i.e.,

26   the application that issued as the 530 Patent) had been allowed, and that the Bergers would again

27   like to meet with Rossignol representatives to discuss the situation.  On March 11, 1999,

28

1    Rossignol's Mr. Rodet met with the Bergers, as requested.  On March 30, 1999, after reviewing the

2    Bergers' allowed U.S. claims, Rossignol advised the Bergers' attorney that Rossignol intended to

3    continue with its own rotatable step-in snowboard binding.  (Ex. 3, Marmonier Decl., ¶ 4 and Exs.

4    E through I).

5           On April 28, 1999, the Bergers' attorney again wrote to Rossignol stating that the U.S.

6    patent claims would cover many configurations of the Bergers' binding, "*possibly* also including

7    Rossignol's Tool less SIS Step-In snowboard binding" (emphasis added), and further stating that

8    Rossignol should determine whether it needed a license from the Bergers.  On May 6, 1999,

9    Rossignol wrote to the Bergers' attorney stating that "[f]rom our point of view the question of

10   potential infringement of the patent of Mr. BERGER by ROSSIGNOL's TOOL LESS Step-in

11   binding was already solved."  The letter further (1) summarized the contacts between the parties

12   from April 1998 to March 1999, (2) expressed Rossignol's belief, after reviewing the U.S. granted

13   claims, that Rossignol did not need a license because its products would not infringe the Bergers'

14   prospective U.S. patent, and (3) forwarded a sample of Rossignol's products "to make sure that you

15   have a good understanding of our product."  Rossignol further stated in its May 6, 1999 letter that:

16          As you can see it, the Step-in system and the angle adjustement [sic] are two
            different fonctions [sic] as you can find this device on a lot of products of prior art.

17          On BERGER's products and in BERGER's patent, we can read that:

18          "The coupling mount and the coupler being configured to automatically engage
19          with each other to lock the upper attachment to the lower attachment…and to
            permit rotation of the upper attachment relative to the lower attachment when the
20          upper attachment is locked to the lower attachment"…

21          It is clear that on the products sold by the ROSSIGNOL Group, the horizontal axis
            does not allow the boot to rotate and it is the reason why we located this fonction
22          [sic] in an other place of the binding.

23          We are sure that this short explanation will convince you that our products don't
            infringe BERGER's patent.

24   (Ex. 3, Marmonier Decl., ¶ 5 and Exs. J and K).

25          Thus, Rossignol's May 6, 1999 letter made clear that products sold by the Rossignol Group,

26   which included Rossignol Ski Company, Inc., would not infringe the Bergers' U.S. patent.  Neither

27   the Bergers nor their attorney ever responded to Rossignol's May 6, 1999 letter, i.e., they never

28
                                                    -6-

1   indicated their disagreement with Rossignol's assessment that it would not infringe the Bergers'

2   U.S. patent and therefore did not need a license.  Rather, on June 21, 2005, after over six years of

3   silence and inaction by the Bergers, the Bergers filed this case, and even then did not serve

4   Rossignol until October 4, 2005.  (Ex. 3, Marmonier Decl., ¶ 6).

5       **D.**   **Plaintiffs' Belated Infringement Contentions**

6       According to Patent L.R. 3-1 and 3-2, Plaintiffs' Infringement Contentions were to be

7   served within 10 days of the November 18, 2005 Initial Case Management Conference.  However,

8   despite repeated requests from Rossignol following the Initial Case Management Conference,

9   Plaintiffs further delayed their action against Rossignol by not serving their Infringement

10  Contentions until January 4, 2006.

11      In their Infringement Contentions (Ex. 4), Plaintiffs assert independent claim 1 and

12  dependent claims 2, 4-6, 8, 19, 21-23, 26-28 and 30 of the 530 Patent against one illustrated

13  Rossignol snowboard binding (hereinafter "accused binding").  Plaintiffs' Infringement

14  Contentions include various photographs of Rossignol's accused binding, with various parts of

15  those products numbered as allegedly corresponding to elements of Plaintiffs' asserted claims.

16  However, Plaintiffs' Infringement Contentions refer to numbered parts that are not identified in the

17  photographs.  This includes alleged numbered parts 17, 19, 21, 24 and 25.

18      Thus, Plaintiffs' Infringement Contentions fail to meet Plaintiffs' burden of demonstrating

19  infringement by Rossignol's accused binding.  Indeed, as demonstrated below, Plaintiffs'

20  Infringement Contentions concede that Rossignol's accused binding is missing several elements of

21  Plaintiffs' asserted patent claims.

22  **III.   LAW AND ARGUMENT**

23      **A.**   **Summary Judgment Standard**

24      Summary judgment should be granted where, as here, there is no genuine issue as to any

25  material fact and Rossignol is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see*

26  *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1327 (Fed. Cir. 2001).  "Summary

27

28

-7-

1  judgment is as appropriate in a patent case as it is in any other case." *Desper Prods., Inc. v.*

2  *QSound Labs, Inc.*, 157 F.3d 1325, 1332 (Fed. Cir. 1998).  In particular, the defenses of equitable

3  estoppel, noninfringement and invalidity are all appropriately decided on summary judgment

4  where the undisputed material facts mandate the entry of judgment as a matter of law. *Telemac*,

5  247 F.3d at 1327 (summary judgment of anticipation); *Sandt Tech., Ltd. v. Resco Metal and*

6  *Plastics Corp.*, 264 F.3d 1344, 1347-48, 1354 (Fed. Cir. 2001) (summary judgment of

7  obviousness); *Scholle Corp. v. Blackhawk Molding Co.*, 133 F.3d 1469, 1471 (Fed. Cir. 1998)

8  (summary judgment of equitable estoppel); *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d

9  1570, 1575 (Fed. Cir. 1995) (summary judgment of noninfringement).

10
11
12

**B.      In View of Plaintiffs' Long Delay Of More Than Six Years In
         Asserting Their Patent Rights Against Rossignol, And The
         Resultant Material Prejudice To Rossignol, Plaintiffs Should
         Be Estopped From Maintaining This Action Against Rossignol**

13

**1.      Law Relating To Equitable Estoppel**

14  Equitable estoppel is a defense to infringement that may serve as an absolute bar to a

15  patentee's claim of infringement. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020,

16  1041 (Fed. Cir. 1992) (*en banc*).  Three elements must be established to bar a patentee's suit on the

17  basis of equitable estoppel:  (1) misleading conduct by the patentee that leads the alleged infringer

18  to reasonably infer that the patentee does not intend to enforce its patent against the alleged

19  infringer, (2) reliance on that conduct by the alleged infringer, and (3) material prejudice to the

20  alleged infringer if the patentee is allowed to proceed with its claim. *Id.* at 1028.  The first

21  "conduct" element may include specific statements, action, inaction, or silence where there was an

22  obligation to speak. *Id.*

23  Equitable estoppel has been held to apply based upon a course of dealings between a

24  patentee and an alleged infringer followed by inaction on the part of the patentee.  In *Scholle*

25  *Corp.*, Scholle had accused Blackhawk's WATERSAFE valved bottle cap of infringing Scholle's

26  patent.  During a subsequent meeting in April 1993, Blackhawk informed Scholle of Blackhawk's

27  redesigned SAFEGARD cap, gave Scholle samples of the SAFEGARD cap, and stated that

28  Blackhawk would consider the SAFEGARD cap to be non-infringing unless Scholle advised

1    Blackhawk otherwise.  Despite subsequent contacts between the parties, Scholle never responded

2    to Blackhawk with respect to the SAFEGARD cap.  Rather, almost three years after the above-

3    referenced meeting, Scholle filed suit against Blackhawk for patent infringement by the

4    SAFEGARD cap.  In affirming a summary judgment determination that Scholle's suit was barred

5    by equitable estoppel, the Court stated:

6           [W]hen the course of dealings between a patentee and an alleged infringer is such
            that the alleged infringer reasonably infers from the patentee's misleading conduct
7           or inaction that the patentee has waived its patent rights, then the first element of
            equitable estoppel has been established absent a statement to the contrary by the
8           patentee.

9    133 F.3d at 1472.[2]  *See also ABB Robotics Inc. v. GMFanuc Robotics Corp.*, 52 F.3d 1062, 1063-

10   65 (Fed. Cir. 1995) (summary judgment of equitable estoppel affirmed based upon GMF's 1986

11   denial of infringement coupled with the patentee's inaction for almost five years before charging

12   GMF with infringement and for almost six years before filing suit).

13          2.      **Plaintiffs Should Be Equitably Estopped From
                    Maintaining This Action Against Rossignol**
14

15          In view of the above-discussed circumstances of (1) the interactions between Rossignol

16   and Plaintiffs in 1998 and 1999, coupled with (2) the Plaintiffs' silence and inaction for over six

17   years before filing suit against Rossignol, (3) Rossignol's reliance upon Plaintiffs' conduct, and

18   (4) the material prejudice that Rossignol would experience if Plaintiffs were now allowed to

19   proceed with this action, Plaintiffs should be estopped from maintaining this action against

20   Rossignol.

21          Like the patent owner in the *Scholle* case discussed above, Plaintiffs sent a letter regarding

22   their alleged patent rights to Rossignol (in April 1998), and, also like *Scholle,* a course of

23   discussions and contacts between the parties followed.  Also as in *Scholle*, Rossignol informed

24   Plaintiffs on various occasions over the next year that Rossignol's products did not infringe

25   Plaintiffs' alleged patent rights.  Rossignol even provided Plaintiffs with a sample Rossignol

26   _____

27   [2] The Court also found the other two elements for equitable estoppel, i.e., Blackhawk relied upon
     Scholle's conduct and would have been materially prejudiced if Scholle was allowed to proceed
28   with its claim.

1  product, as did the accused infringer in *Scholle*, "to make sure [Plaintiffs had] a good

2  understanding of [Rossignol's] product." (Ex. 3, Marmonier Decl., ¶ 5 and Ex. K).  Finally, in its

3  May 6, 1999 letter, Rossignol specifically explained that its products did not infringe Plaintiffs'

4  then-pending allowed U.S. patent application claims (which issued as the 530 Patent claims).

5       With full awareness of both the products being marketed and sold by Rossignol and

6  Rossignol's belief that it was free to continue marketing and selling such products without

7  infringing Plaintiffs' U.S. patent, Plaintiffs, like the patent owner in *Scholle*, never responded to

8  Rossignol's May 6, 1999 assertion of noninfringement of Plaintiffs' U.S. patent.  Indeed, Plaintiffs

9  remained silent and inactive with respect to Rossignol until the First Amended Complaint in this

10  action was served on Rossignol on October 4, 2005.  Accordingly, after May 1999, Rossignol

11  relied upon the aforementioned conduct, silence and inaction of Plaintiffs by proceeding over the

12  next six years to manufacture, market and sell various products containing the rotatable step-in

13  binding that is now accused of infringement in this action, under the reasonable assumption that

14  Plaintiffs did not intend to pursue Rossignol for alleged infringement.  (Ex. 3, Marmonier

15  Decl., ¶ 7).

16       Rossignol's reliance on Plaintiffs' conduct, silence and inaction is apparent from the record.

17  After Plaintiffs' attorney first contacted Rossignol in April 1998, there was, as discussed above, a

18  series of contacts between the parties culminating in Rossignol's determination that its products

19  did not infringe Plaintiffs' pending U.S. patent claims.  Thus, in Rossignol's May 6, 1999 letter,

20  responding to the April 28, 1999 letter from Plaintiffs' attorney, Rossignol expressed its

21  understanding that the matter of alleged infringement "was already solved" based on prior

22  discussions and correspondence between the parties.  (Ex. 3, Marmonier Decl., ¶ 5 and Ex. K).

23  Having then recounted in detail in its May 6, 1999 letter why it believed the matter "was already

24  solved," and then not hearing from Plaintiffs, Rossignol reasonably believed all the more strongly

25  that it had solved the matter by convincing Plaintiffs that Rossignol did not infringe.  (Ex. 3,

26  Marmonier Decl., ¶ 6).  Accordingly, the record fully supports the conclusion that Rossignol relied

27  on the course of conduct between the parties, followed by Plaintiffs' silence and inaction, to

28

1   conclude that it would not be sued by Plaintiffs for alleged infringement. *See ABB Robotics, Inc.*,

2   52 F.3d at 1064 (reliance element satisfied on summary judgment record where course of conduct

3   between the parties "lulled GMF into a sense of security that it would not be sued").

4          It is further apparent that Rossignol would be materially prejudiced if Plaintiffs are allowed

5   to proceed with this action.  Prejudice may be established by showing that the maintenance of a

6   lawsuit could result in "damages which likely would have been prevented by an earlier suit."

7   *Aukerman*, 960 F.2d at 1033.  Increased sales and associated expenditures made during the period

8   of Plaintiffs' delay constitute economic prejudice supporting a finding of equitable estoppel. *See,*

9   *e.g., ABB Robotics, Inc.*, 52 F.3d at 1065. Here, Rossignol proceeded to manufacture, market and

10  sell many products containing the accused binding during the period of Plaintiffs' silence and

11  inaction, and to incur costs associated with such activities.  To now permit Plaintiffs to maintain

12  this action for damages and an injunction based upon the very activities in which Plaintiffs

13  acquiesced by their silence and inaction would result in unfair and material prejudice to Rossignol.

14  (Ex. 3, Marmonier Decl., ¶¶ 7 and 8).

15         In these circumstances, as in *Scholle*, summary judgment should be entered in favor of

16  Rossignol declaring Plaintiffs' patents to be unenforceable against Rossignol, and Plaintiffs' action

17  against Rossignol to be barred, based on equitable estoppel.

18  ### C.   Even If Enforceable, Plaintiffs' Asserted Patent Claims Are Not
19  ### Infringed By Rossignol's Accused Binding, As Admitted By Plaintiffs

20         There are many reasons why Rossignol's accused binding does not infringe Plaintiffs'

21  asserted patent claims and, if necessary, Rossignol will present all of such reasons if this case

22  proceeds.  However, based on admissions in Plaintiffs' Infringement Contentions, it is clear now

23  that Rossignol's accused binding does not infringe at least for the reasons discussed below.

24  Moreover, such reasons are more than sufficient for purposes of this motion, given that the

25  absence of even a single claim limitation from an accused product requires a determination of

26  noninfringement. *Southwall*, 54 F.3d at 1575.

27

28
                                             -11-

1

### 1.   Law Relating To Noninfringement

2       Claims typically must be construed before determining whether or not they are infringed or

3   invalid, and must be construed the same way for both purposes. *Amazon.com, Inc. v.*

4   *Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001); *Markman v. Westview*

5   *Instruments, Inc.*, 52 F.3d 967, 976, 996 n. 7 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370

6   (1996). However, this does not preclude early summary judgment of noninfringement in a case

7   where, as here, it is evident from the patentee's infringement analysis that one or more claim

8   limitations are missing from the accused product. *See, e.g., Faroudja Labs., Inc. v. Dwin Elecs.,*

9   *Inc.*, 1999 WL 111788, *3-4 (N.D. Cal. 1999) (Ex. 16) (summary judgment of noninfringement of

10   596 patent without a *Markman* hearing due to absence of claimed film-to-television feature in

11   accused device and process); *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 1999 WL

12   33490210, *2 and *6-7 (N.D. Cal. 1999), *aff'd*, 236 F.3d 1363 (Fed. Cir. 2001) (Ex. 17) (summary

13   judgment of noninfringement of claim 55, granted simultaneously with claim construction order,

14   due to absence of claimed prevention function in accused device). Moreover, any necessary claim

15   construction can be just as well conducted in the context of a summary judgment motion as in a

16   separate *Markman* hearing, *Markman*, 52 F.3d at 981 (claim construction may be conducted "in

17   the context of dispositive motions"), particularly given that "only those terms need to be construed

18   that are in controversy, and only to the extent necessary to resolve the controversy." *Vivid Techs.,*

19   *Inc. v. American Science & Eng'r., Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999). This is especially so

20   in relatively simple cases where the claims use ordinary words whose meanings can be readily

21   understood. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (*en banc*); *see also*

22   *Rogers v. Desa Int'l, Inc.*, 166 F.Supp.2d 1202, 1204-05 (E.D. Mich. 2001) (no need for *Markman*

23   hearing before granting summary judgment where there is "lack of technical and linguistic

24   complexity and lack of conflicting factual evidence" and "the papers filed are sufficient to construe

25   the claims").

26       To determine infringement or noninfringement, a claim is compared to an accused product

27   to determine whether such product infringes the claim. *Markman*, 52 F.3d at 976. To establish

28

-12-

1    infringement, <u>every</u> claim limitation must be found in an accused product. *Warner-Jenkinson Co.*

2    *v. Hilton Davis Chemical Co.*, 520 U.S. 17, 29, 40 (1997). The patentee must prove infringement

3    by a preponderance of the evidence. *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241,

4    1247 (Fed. Cir. 2000).

5         If a claim "reads on" an accused product, i.e., the accused product embodies each limitation

6    set forth in the claim exactly, the accused product is said to literally infringe the claim. *Cole v.*

7    *Kimberly-Clark Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1996). In the absence of literal infringement,

8    infringement may sometimes be found under the doctrine of equivalents if the accused product

9    contains features that are identical or equivalent to each claimed element. *Warner-Jenkinson*, 520

10   U.S. at 21 and 40. However, Plaintiffs have waived infringement by equivalency in this case by

11   failing to rely upon equivalency in their Infringement Contentions as required by Patent L.R. 3-

12   1(d). In any event, infringement could not be found in this case literally or under the doctrine of

13   equivalents because, as admitted by Plaintiffs and demonstrated below, Rossignol's accused

14   binding is missing entire limitations of Plaintiffs' asserted claims. *See, e.g., Freedman Seating Co.*

15   *v. American Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005) (no infringement literally or under

16   the doctrine of equivalents where an entire claim limitation is missing from an accused product).

17        **2.    Plaintiffs Have Admitted That Rossignol's Accused**
            **Binding Is Missing The "Rotation Of The Upper**
18          **Attachment Relative To The Lower Attachment" Element**
            <u>**Of The Asserted Claims, And Therefore Does Not Infringe**</u>
19

20        As noted above, claim 1 of the 530 Patent requires "rotation of the upper attachment

21   relative to the lower attachment." In other words, as is clear from the 530 Patent specification, the

22   entire upper attachment rotates relative to the entire lower attachment. (Ex. 1, 530 Patent, C4/L66-

23   C5/L8, C7/L52-C8/L14 and Figs. 1 and 5). *See also, e.g., Zodiac Pool Care Inc. v. Hoffinger*

24   *Indus. Inc.,* 206 F.3d 1408, 1414 (Fed. Cir. 2000) (noninfringement ruling, noting "[T]he

25   limitation recites a relationship between the edge and the stop, not a relationship between the edge

26   and a portion of the stop."). As admitted by Plaintiffs, Rossignol's accused binding does not meet

27   this claim limitation.

28

-13-

1    In their Infringement Contentions, Plaintiffs contend that the upper attachment in

2    Rossignol's accused binding is the plate 3 that is fixed to the boot, and that the lower attachment in

3    Rossignol's accused binding includes rotatable base 4, hold-down disc 5B (that is fixed to the

4    snowboard), and an unidentified  component 17.  (Ex. 4, Claim Chart, p. 1, and attached

5    photographs; Plaintiffs' reference numbers used here).  As is indisputable from both the

6    photographs attached to Plaintiffs' Infringement Contentions (Ex. 4) and from Rossignol's product

7    photographs submitted herewith (Ex. 2), alleged upper attachment plate 3 of Rossignol's accused

8    binding rotates <u>with</u> base 4 of the alleged lower attachment, <u>not relative to</u> base 4.  In other words,

9    alleged upper attachment plate 3 does *not* rotate relative to the entire alleged lower attachment in

10   Rossignol's accused binding.  Thus, by Plaintiffs' own admission, Rossignol's accused binding is

11   missing the "rotation of the upper attachment relative to the lower attachment" limitation, and

12   therefore does not infringe asserted claim 1 of the 530 Patent or any of the asserted claims

13   depending from claim 1.[3]

14          **3.**     **Plaintiffs Have Admitted That Rossignol's Accused Binding**
**Is Missing The "Automatically Engage With Each Other**
15                  **To Lock ... And To Permit Rotation" Element of the**
16                  <u>**Asserted Claims, And Therefore Does Not Infringe**</u>

17   Claim 1 of the 530 Patent also recites "the coupling mount and the coupler being

18   configured *to automatically engage with each other to lock* the upper attachment to the lower

19   attachment ... *and to permit rotation* of the upper attachment relative to the lower attachment ...."

20   (Emphasis added).  In other words, as is clear from the 530 Patent specification, the coupling

21   mount and coupler are configured so that their automatic engagement with each other provides for

22   <u>both</u> (1) locking of the upper attachment to the lower attachment and (2) rotation of the upper

23   attachment relative to the lower attachment.  (Ex. 1, 530 Patent, e.g., C5/L3-8, C5/L29-38,

24   C6/L40-54, C7/L59-65, C8/L9-14 and Figs. 1, 2C, 3, 3A and 5).  As conceded by Plaintiffs,

25

26   [3] Where a claim is not infringed because the accused device does not include one or more claim
limitations, then the claims depending from the non-infringed claim cannot be infringed for the
27   same reason.  *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 685-86
(Fed. Cir. 1990).

28

1   Rossignol's accused binding does not meet this claim limitation, even aside from Plaintiffs' above-

2   discussed admission that the alleged upper attachment in Rossignol's accused binding does not

3   rotate relative to the alleged lower attachment.

4        In their Infringement Contentions, Plaintiffs contend that locking of alleged upper

5   attachment 3 to alleged lower attachment 5B, 4, 17 in Rossignol's accused binding is achieved by

6   engagement of alleged coupler (boot pins) 6A, 6B with components 7A, 7B and 8A, 8B of alleged

7   coupling mount (jaws) 5A.  (Ex. 4, Claim Chart, p. 1, and attached photographs).  By contrast,

8   Plaintiffs do *not* contend that rotation in Rossignol's accused binding is permitted by such

9   engagement, but rather contend that rotation in Rossignol's accused binding is permitted only "by

10  unlatching 10," i.e., by actuating the rotation release mechanism identified by numeral 10 in the

11  photographs attached to Plaintiffs' Infringement Contentions, so as to release the rotatable base 4.

12  (*Id.*).  Plaintiffs were forced to formulate their contentions in this manner by the indisputable fact

13  that, in Rossignol's accused binding, engagement of alleged coupler 6A, 6B and alleged coupling

14  mount 5A does *not* provide for rotation of the boot relative to the board at all, much less rotation

15  of upper attachment part 3 relative to lower attachment part 4.  Thus, by Plaintiffs' own admission,

16  Rossignol's accused binding is missing a coupling mount and coupler that are configured as

17  required by the "automatically engage with each other to lock … and to permit rotation" limitation,

18  and therefore Rossignol's accused binding does not infringe asserted claim 1 of the 530 Patent or

19  any of the asserted claims depending from claim 1.

20          **4.      Plaintiffs Have Admitted That Rossignol's Accused Binding
                     Is Missing The "Without Release" Element Of The**
21                   **Asserted Claims, And Therefore Does Not Infringe**

22        A further requirement of asserted independent claim 1 of the 530 Patent is that the coupler

23  and coupling mount must be configured to automatically engage with each other "to permit

24  rotation of the upper attachment relative to the lower attachment when the upper attachment is

25  locked to the lower attachment *without release of said upper attachment from said lower*

26  *attachment.*"  (Emphasis added).  In other words, as is clear from the 530 Patent specification,

27  when the upper attachment is engaged with and locked to the lower attachment, before being

28

-15-

1   latched in a selected rotary position with the disclosed rotary position lock, the upper attachment is

2   rotatable relative to the lower attachment without the need to first actuate a release mechanism to

3   enable such relative rotation.  (Ex. 1, 530 Patent, e.g., C5/L3-8, C6/L51-54, C9/L20-23, 45-50 and

4   Figs. 1, 5 and 10).  As conceded by Plaintiffs, Rossignol's accused binding does not meet this

5   claim limitation, even aside from Plaintiffs' above-discussed admission that the alleged upper

6   attachment in Rossignol's accused binding does not rotate relative to the alleged lower attachment.

7          As noted above, in their Infringement Contentions Plaintiffs contend only that rotation in

8   Rossignol's accused binding is permitted by unlatching rotation release mechanism 10.  (Ex. 4,

9   Claim Chart, p. 1, and attached photographs).  In other words, with the alleged upper attachment 3

10  of Rossignol's accused binding locked to the alleged lower attachment 5B, 4, 17 (i.e., the boot

11  locked to the snowboard), the alleged upper attachment does *not* rotate relative to the alleged

12  lower attachment at all, much less "without release of said upper attachment from said lower

13  attachment" as required by claim 1.  Rather, a release mechanism must be actuated in Rossignol's

14  accused binding to permit any rotation of the boot relative to the board (and even then alleged

15  upper attachment part 3 *never* rotates relative to alleged lower attachment part 4).  Thus, by

16  Plaintiffs' own admission, Rossignol's accused binding is missing the "without release" limitation,

17  and therefore does not infringe asserted claim 1 of the 530 Patent or any of the asserted claims

18  depending from claim 1.

19          **5.      Plaintiffs Have Admitted That Rossignol's Accused Binding**
            **Is Missing The "Coupling Mount Attached ..." Element Of**
20          **The Asserted Claims, And Therefore Does Not Infringe**

21          Claim 1 of the 530 Patent also requires "a coupling mount *attached* to the other of said

22  upper and lower attachments," by contrast to its further recitation of "a lower attachment

23  *connectable* to a board."  (Emphasis added).  As conceded by Plaintiffs, Rossignol's accused

24  binding does not meet the "coupling mount attached…" claim limitation.

25          The varying use of "connectable" versus "attached" in claim 1 is not coincidental.  The 530

26  Patent specification describes lower attachment plate 216 as being "connected" to a snowboard

27  and, by contrast, describes coupling mount 222 as being "attached" to lower attachment plate 216.

28
                                              -16-

1    (Ex. 1, 530 Patent, C5/L1-3). In this way, Plaintiffs differentiated between an attachment plate

2    that may be directly or indirectly connected to the snowboard (e.g., 530 Patent Fig. 3A: mounting

3    plate 304 of lower attachment plate 216 connected to the snowboard via alignment ring 302 and

4    spacer 300) and the direct attaching of the coupling mount to the attachment plate (e.g., 530 Patent

5    Fig. 3A: direct attaching of coupling mount 322 (sic, 222) to mounting plate 304). This use of the

6    word "attached" to denote a direct fastening versus the word "connected" to denote a direct or

7    indirect fastening is recognized in the prevailing case law. *See, e.g., Searfoss v. Pioneer*

8    *Consolidated Corp.*, 374 F.3d 1142, 1149-50 (Fed. Cir. 2004) (recognizing the distinction between

9    "connecting" that may denote direct or indirect fastening and "attaching" that denotes direct

10   fastening). Through use of the word "connectable" (i.e., capable of being connected) in claim 1

11   rather than "connected," Plaintiffs even further differentiated the contrasting use of the word

12   "attached."

13          In their Infringement Contentions, Plaintiffs admit that the alleged coupling mount in

14   Rossignol's accused binding is not "attached" (i.e., directly fastened) to either of the alleged upper

15   and lower attachments. Rather, Plaintiffs state that alleged coupling mount 5A is "attached to 5B

16   *via* fork 17, 25." (Ex. 4, Claim Chart, p. 1, and attached photographs). Thus, by Plaintiffs' own

17   admission, Rossignol's accused binding is missing the "coupling mount attached ..." limitation,

18   and therefore does not infringe asserted claim 1 of the 530 Patent or any of the asserted claims

19   depending from claim 1.

20   **D.     The Asserted Claims Of The 530 Patent Are Invalid, Particularly
             If Applied So As To Cover Rossignol's Accused Binding**

21

22          If necessary, Rossignol will demonstrate later in this case that Plaintiffs' asserted patent

23   claims are invalid in view of the prior art and for additional reasons regardless of how the claims

     are construed, and that, if Plaintiffs' asserted claims are narrowly construed in an effort to preserve
24
     their validity, they are not infringed. However, it is evident at this early stage of the case that
25
     Plaintiffs' asserted claims are clearly invalid in view of the prior art if applied so as to cover
26
     Rossignol's accused binding as alleged in Plaintiffs' Infringement Contentions. This is because
27
     there is substantial prior art that, like Rossignol's accused binding, includes one mechanism for
28

-17-

1   locking a boot to a snowboard and a second mechanism for permitting rotation of the boot relative

2   to the snowboard with the boot locked in the binding.  We present below just a few examples,

3   while reserving Rossignol's right to present others if this case goes forward.

4                       **1.      Law Relating to Invalidity**

5          A U.S. patent is presumed to be valid.  35 U.S.C. § 282.  However, the presumption of

6   validity can be overcome by clear and convincing evidence that the patent is invalid.  *SIBIA*

7   *Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355 (Fed. Cir. 2000).  The bases for

8   holding a patent invalid include, among others, that the claims are anticipated by or would have

9   been obvious in view of the prior art as discussed below.  In the case of prior art-based invalidity,

10  the clear and convincing burden of proof may be more easily met through reliance upon prior art

11  that was not before the examiner during prosecution.  *Id.* at 1355-56.  However, patent claims

12  nonetheless have been held invalid based upon prior art that was before the examiner.  *See, e.g.,*

13  *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1319, 1322 n.2, 1325 (Fed. Cir. 2004)

14  (claims obvious in view of the same and cumulative prior art); *Brown v. 3M*, 265 F.3d 1349, 1351-

15  54 (Fed. Cir. 2001) (claim anticipated by the same prior art); *Celeritas Techs. Ltd. v. Rockwell Int'l*

16  *Corp.*, 150 F.3d 1354, 1360-61 (Fed. Cir. 1998) (claims anticipated by the same prior art).

17         Prior art may be in a number of forms.  For example, the prior art may be (1) a patent or

18  printed publication in the United States or a foreign country, or a public use or offer for sale in the

19  United States, more than one year before the earliest effective U.S. filing date of the patent (35

20  U.S.C. §102(b)); (2) knowledge or use by others in the United States, or a patent or printed

21  publication in the United States or a foreign country, before the invention thereof by the patentee

22  (35 U.S.C. §102(a)); or (3) a patent granted on, or a publication of, a patent application by another

23  filed in the United States before the invention thereof by the patentee (35 U.S.C. §102(e)).  Other

24  examples are provided in 35 U.S.C. §102.

25         If all claimed elements/steps are disclosed, expressly or inherently, in a single prior art

26  reference, that reference is said to "anticipate" the claimed invention, thereby invalidating the

27

28
                                                -18-

1  claim(s) under 35 U.S.C. §102 for lack of novelty. *Transclean Corp. v. Bridgewood Servs., Inc.*,

2  290 F.3d 1364, 1370 (Fed. Cir. 2002).  In the absence of an anticipatory prior art reference, the

3  issue becomes whether "the differences between the subject matter sought to be patented and the

4  prior art are such that the subject matter as a whole would have been obvious at the time the

5  invention was made to a person having ordinary skill in the art to which said subject matter

6  pertains." 35 U.S.C. §103(a).  In determining obviousness, the following four factors must be

7  considered:  (1) the scope and content of the prior art; (2) any differences between the prior art and

8  the claims at issue; (3) the level of ordinary skill in the pertinent art; and (4) any secondary

9  considerations evidencing nonobviousness, such as commercial success, copying, long felt but

10  unsolved needs, failures of others, unexpected results, etc. *Graham v. John Deere Co.*, 383 U.S. 1,

11  17-18 (1966).

12      Prior art references may be modified or combined to render obvious a subsequent invention

13  if there was some suggestion or motivation to do so derived from the prior art itself, the nature of

14  the problem to be solved, or the knowledge of one of ordinary skill in the art. *SIBIA*

15  *Neurosciences*, 225 F.3d at 1356; *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 546 (Fed. Cir. 1998).

16  The suggestion or motivation need not be expressly stated, *Medical Instrumentation and*

17  *Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1221 (Fed. Cir. 2003), and the prior art need not

18  be modified or combined for the same reasons contemplated by the inventor, *Pfaff v. Wells Elecs.,*

19  *Inc.*, 124 F.3d 1429, 1439 (Fed. Cir. 1997), *aff'd*, 525 U.S. 55 (1998).

20      The level of skill in the art is determined entirely with reference to a hypothetical person of

21  ordinary skill in the art presumed to be aware of all of the pertinent prior art.  Relevant factors in

22  determining the level of skill include the educational level of active workers in the field, the type

23  of problems encountered in the art, prior art solutions to such problems, the rapidity of innovations

24  in the art, and the sophistication of the technology. *In re GPAC, Inc.*, 57 F.3d 1573, 1579 (Fed.

25  Cir. 1995).

26      In order for secondary considerations evidence to be given substantial weight in an

27  obviousness analysis, the patentee must demonstrate that there is a nexus between such evidence

28

-19-

1   and the merits of the claimed invention. *Id.* at 1580.  In other words, the secondary considerations

2   evidence must arise from the patented invention as claimed, rather than from extrinsic influences

3   such as a disclosed but unclaimed feature or a feature of the prior art.  *Id.*

4           **2.**       **Plaintiffs' Asserted Claims Are Invalid Under 35 U.S.C. §102(b)**

5                    **As Anticipated By PCT Publication WO 89/08480 (AITEC)**

6         International PCT Publication No. WO 89/08480 (Ex. 5 (with English translation),

7   hereinafter "AITEC") was published on September 21, 1989, more than one year before the earliest

8   possible U.S. filing date of  the 530 Patent, and thus constitutes prior art to the 530 Patent under 35

9   U.S.C. §102(b).  AITEC was not cited during prosecution of the 530 Patent.

10         AITEC disclosed multiple embodiments of a rotatable, automatic engagement snowboard

11   binding (Fig. 20 embodiment shown and described

12   here).  The AITEC binding included a plate 3 fixed to

13   a snowboard 1, and a boot restraining mechanism 10,

14   18, 24 (for automatic locking of a snowboarder's boot

15   to the snowboard when the snowboarder steps onto

16   the snowboard) mounted on a rotor 135 that was

17   rotatable with respect to plate 3 and the snowboard.



18   A quick release locking mechanism 162 on rotor 135 could be released and then relatched in any

19   of a number of catch openings 147 to permit the boot restraining mechanism to be rotated, with the

20   boot locked in the binding, so as to adjust the rotary position of the boot with respect to the

21   snowboard.

22         As more clearly shown in the Ex. 10 chart, AITEC disclosed, expressly or inherently, every

23   element of every one of Plaintiffs' asserted claims, and therefore anticipates those claims.  Thus,

24   Plaintiffs' asserted claims are invalid for  anticipation by AITEC.

25           **3.**       **Plaintiffs' Asserted Claims Are Invalid Under 35 U.S.C. §102(b)**

26                    **As Anticipated By French Patent Publication 2,618,688 (Scott)**

27         French Patent Publication No. 2,618,688 to Scott de Martinville (Ex. 6 (with English

28   translation), hereinafter "Scott") was published on February 3, 1989, more than one year before the

-20-

ROSSIGNOL'S MOTION FOR SUMMARY JUDGMENT OF UNENFORCEABILITY, NONINFRINGEMENT AND/OR
INVALIDITY
Case No. 3:05-CV-02523 CRB

1  earliest possible U.S. filing date of the 530 Patent, and thus constitutes prior art to the 530 Patent

2  under 35 U.S.C. §102(b).  Scott was not cited during prosecution of the 530 Patent.

3          Scott disclosed a rotatable, automatic engagement snowboard binding (Fig. 1 of Scott

4  shown and described here).  The Scott binding included a

5  plate 8 and a ring 10 fixed (in slides 22) to a snowboard 14,

6  and a boot restraining mechanism 4, 25, 27 (for automatic

7  locking of a snowboarder's boot to the snowboard when the

8  snowboarder steps onto the snowboard) mounted on a ring 6

9  that was rotatable with respect to plate 8, ring 10 and the

10  snowboard.  The rotatable boot restraining mechanism could

11  be locked or released with fasteners 16, accessible with the



12  boot locked in the binding, to permit the boot to freely rotate relative to the snowboard or to permit

13  adjustment of the rotary position of the boot with respect to the snowboard.

14          As more clearly illustrated in the Ex. 11 chart, Scott disclosed, expressly or inherently,

15  every element of every one of Plaintiffs' asserted claims, and therefore anticipates those claims.

16  Thus, Plaintiffs' asserted claims are invalid for anticipation by Scott.

17          **4.    Plaintiffs' Asserted Claims Are Alternatively Invalid Under
                    35 U.S.C. §103(a) For Obviousness From AITEC Or Scott**

18          **InView Of One Another And/Or Additional Prior Art**

19          If AITEC or Scott is determined to be missing any element of any of Plaintiffs' asserted

20  claims, such claims nonetheless would have been obvious from AITEC or Scott in view of one

21  another, U.S. Patent No. 5,660,410 ("Alden"), U.S. Patent No. 5,520,406 ("Anderson") and/or U.S.

22  Patent No. 5,577,755 ("Metzger") (Exs. 7, 8 and 9).  Alden, Anderson and Metzger respectively

23  issued from patent applications filed on March 2, 1995 (based on a continuation-in-part

24  application filed on December 9, 1994), August 18, 1994, and July 11, 1994, and thus constitute

25

26

27

28

1   prior art to the 530 Patent under 35 U.S.C. §102(e).[4]  Alden was not cited during prosecution of

2   the 530 Patent.

3         Pertinent features of Alden, Anderson and Metzger are illustrated in the chart Exs. 12, 13

4   and 14.  While Rossignol believes, as shown in Exs. 12 and 13, that each of Alden and Anderson

5   also anticipates all of the asserted claims of the 530 Patent if such claims are applied so as to cover

6   Rossignol's accused binding, for simplicity such references are relied upon in this motion only in

7   combination with AITEC and/or Scott.

8         As seen in Exs. 7, 8, 12 and 13 (and the Figures from the references set forth here), Alden

9   and Anderson each disclosed a rotatable, automatic engagement snowboard binding.  Each



**Alden Fig. 1**



**Alden Fig. 3**

binding included a first, rotatable portion (Alden: 20a, 20b;

Anderson: 48) fastened to a snowboard, and a second portion

(Alden: 88, 132; Anderson: 22, 24, 26, 28, 32) fastened to a

snowboarder's boot for coupling with the first portion (for

automatic locking of a snowboarder's boot to the snowboard

when the snowboarder steps onto the snowboard).  Each

binding included distinct upper and lower attachment and

coupling hardware (as shown).  The Anderson binding, like

Rossignol's accused binding, included pins 22, 24, 26, 28



**Anderson**

---

[4] Anderson may constitute prior art under §102(b) if the 530 Patent is determined not to be entitled
to the benefit of its June 25, 1996 provisional application filing date.  However, for purposes of
this motion, Anderson is treated as prior art under §102(e).

1   fastened to a boot with a plate 32 and laterally extending from the bottom of the boot to engage

2   with lateral jaws (shown generally at arrows 56 and 44) on the rotatable binding portion 48

3   fastened to the snowboard.  Each of Alden and Anderson further disclosed that the rotatable

4   portion of the binding could be locked or released with fasteners (Alden: 32; Anderson: 104), to

5   permit the boot to rotate with respect to the snowboard or to permit adjustment of the rotary

6   position of the boot with respect to the snowboard.  Alden's fasteners were accessible with the

7   boots locked in the bindings.

8        As seen in Exs. 9 and 14 (and Fig. 1 of Metzger set forth here), Metzger disclosed a

9    rotatable strap-type snowboard binding.  Like Rossignol's

10                                                            accused binding, Metzger's binding included a base plate

11                                                           20 fixed to a snowboard 90, with a boot restraining

12                                                           member 40 rotatably mounted to the base plate.  The boot

13                                                           restraining member had left and right locking assemblies

14                                                           60R, 60L, each of which included a retractable pin that

15                                                           could be engaged with any of a number of holes 36

16                                                           through the periphery of the base plate to lock the boot

17                                                           restraining member in a desired rotary position, or to

18                                                           change the rotary position of the boot restraining

19                                                           member, with the boot locked in the binding.[5]  The

20                                                           locking assembly pins could also be retracted to permit

21   the boot restraining member to freely rotate relative to the base plate and hence the snowboard.

22        It would have been obvious to modify AITEC or Scott, in view of the clear teachings of

23   one another and the other references discussed above, to employ different coupling and/or rotation

24

25   [5] Such a rotation mechanism (with a quick-release rotary position lock), operable with the boots
     locked in the bindings, was likewise included in snowboard bindings sold by Look Snowboards, a
26   Rossignol subsidiary, as long ago as the 1990/1991 season.  (See Ex. 15, 1990/1991 Look
     Snowboards brochure (and English translation), which is printed publication prior art to the 530
27   Patent under 35 U.S.C. §102(b)).

28

1   mechanisms, such as those used in Rossignol's accused binding.  For example, one of ordinary

2   skill in the art would have been motivated, by the clear teachings of Alden and/or Anderson, to

3   substitute the automatic boot restraining/locking mechanism taught by Alden or Anderson, with its

4   particular, distinct upper and lower attachments, coupler and coupling mount, for the automatic

5   boot restraining/locking mechanism of AITEC or Scott, so as, e.g., to ensure positive locking and

6   easy release of the boot to and from the board.  This is especially so given that the Alden and

7   Anderson bindings, like those of AITEC and Scott, are rotatable, automatic engagement bindings.

8   By way of an additional example, one of ordinary skill in the art would have been motivated to

9   substitute Metzger's particular rotation mechanism (with its quick-release rotary position locks) for

10  AITEC's or Scott's rotation mechanism, or to substitute Metzger's or AITEC's quick-release rotary

11  position locks for Scott's fasteners 16, so as, e.g., to achieve a simple, dependable rotary position

12  locking mechanism capable of 360° free rotation or rotary position adjustment.[6]  In addition to

13  motivations provided by the nature of the problem to be solved and the knowledge of the

14  ordinarily skilled artisan, one of ordinary skill in the art would have been motivated to so combine

15  the various features of the references because the references clearly teach the benefits to be

16  achieved by combining automatic engagement, locking and rotation features, and because the

17  elements of the asserted 530 Patent claims appear in the prior art in the same configurations, being

18  used in the same way, and serving the same functions/purposes as claimed in the 530 Patent.  *See,*

19  *e.g., In re Gorman*, 933 F.2d 982, 987 (Fed. Cir. 1991).[7]  Moreover, where, as here, the teachings

20  relied upon to show obviousness are repeated in a number of references, the conclusion of

21  obviousness is strengthened.  *Kansas Jack, Inc. v. Kuhn*, 719 F.2d 1144, 1149 (Fed. Cir. 1983)

22  (cited in *Gorman*).

23

24  [6] One of ordinary skill in the art also would have been motivated to employ Metzger's rotation mechanism in Alden or Anderson, e.g., so as to provide quick release rotary position locks to the left and right of the boot in lieu of Alden's fasteners 32 and Anderson's fasteners 104.

25

26  [7] The level of skill in the art is relatively high, as reflected, e.g., by the problems encountered and solutions provided in the prior art.  Rossignol is aware of no secondary considerations evidence that would suggest the nonobviousness of Plaintiffs' asserted claims.  Indeed, any alleged secondary considerations evidence (e.g., commercial success, etc.) was clearly due to unclaimed or prior art features and not to any alleged invention.

27

28

-24-

1    Thus, if any of Plaintiffs' asserted claims are determined not to be anticipated by AITEC or

2    Scott, such claims certainly would be invalid as a matter of law for having been obvious from

3    AITEC or Scott in view of one another, Alden, Anderson and/or Metzger.

4    **IV.     CONCLUSION**

5        In view of the above, Plaintiffs are equitably estopped from proceeding with this case

6    against Rossignol and, in any event, Plaintiffs' asserted patent claims are not infringed and are

7    invalid.  Accordingly, Rossignol's motion for summary judgment should be granted, and this case

8    should be dismissed with prejudice.

9    Dated: February 21, 2006                          Respectfully submitted,

10                                                     ROSSIGNOL SKI COMPANY, INC.

11

12                                          By:   s/Edward P. Walker
                                                 EDWARD P. WALKER (*Pro Hac Vice*)
13                                               JOHN W. O'MEARA (*Pro Hac Vice*)
                                                 VU Q. BUI (*Pro Hac Vice*)
14                                               OLIFF & BERRIDGE, PLC
                                                 277 South Washington Street, Suite 500
15                                               Alexandria, VA  22314
                                                 Telephone:  (703) 836-6400
16                                               Facsimile:  (703) 836-2787
                                                 Email:  ewalker@oliff.com;
17                                                       jomeara@oliff.com;
                                                        vbui@oliff.com
18
                                                 KENNETH L. NISSLY (CA Bar No. 77589)
19                                               SUSAN van KEULEN (CA Bar No. 136060)
                                                 THELEN REID & PRIEST LLP
20                                               225 West Santa Clara Street, Suite 1200
                                                 San Jose, CA  95113-1723
21                                               Telephone:  (408) 292-5800
                                                 Facsimile:  (408) 287-8040
22                                               Email:  kennissly@thelenreid.com;
                                                        svankeulen@thelenreid.com
23
                                                 Attorneys for Defendant/Counterclaim Plaintiff
24                                               Rossignol Ski Company, Inc.

25

26

27

28

-25-